**TORI S. BRYANT, ESQ.**
**374 E. H ST, STE. A, PMB 429**
**CHULA VISTA, CALIFORNIA 91910**
Telephone: 619-208-0262

Tori S. Bryant
Arizona State Bar No. 020391

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) |
| | ) |
| **TORI BRYANT, Esquire, Admitted to** | ) No. 19-80173 |
| the bar of the Ninth Circuit: November | ) |
| 20, 2018 | ) **MOTION FOR REINSTATEMENT** |
| | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

      Respondent, TORI BRYANT, moves this Court for reinstatement to practice law before this Court. Respondent was removed (disbarred) from the authorized roll of attorneys as of April 8, 2022, for failure to respond to an Order to Show Cause issued on January 20, 2022. Respondent did request a hearing on the Order to Show Cause, which she filed February 18, 2022. However, she never submitted a statement addressing the Court's concerns. As a result, this Court disbarred Respondent in April of last year, thereby unleashing a series of Orders to Show Cause and disbarment decisions based on this Court's decision.[1] None of the

---

[1] Respondent was subsequently disbarred from immigration agencies under the Department of Justice in June 2022; an order of disbarment issued from the State Bar of Arizona's Presiding Disciplinary Judge in September 2022, but a stay was granted with conditions pending appeal to the Arizona Supreme Court; and the U.S. District Court for the District of Arizona disbarred Respondent in November of 2022.

1

subsequent orders of disbarment were as a result of an independent review by the adjudicator once this Court issued its decision without a hearing/proceeding.

Respondent admits that she failed to answer this Court's Order to Show Cause (hereinafter "OSC"). Respondent suffered a heart attack on January 11, 2022, and spent four days in the hospital at Sharp Chula Vista Hospital in Chula Vista, California. The week following Respondent's discharge from the hospital, she received the OSC. Unfortunately, Respondent's immediate reaction was to delay handling the OSC until she had dealt with all her doctors and received a treatment plan following her heart attack. Ms. Bryant admits that she did not request an extension or notify the Court of her critical medical condition. In her state of mind, she chose to focus on her health first. That decision caused a barrage of negative decisions by courts who adhered strictly to the spirit of reciprocal discipline and ignored Respondent's documentary evidence supporting her inability to respond to this Court and address the issues at hand in that moment.

## FACTUAL SUMMARY

Once this Court disbarred Respondent, the Department of Justice ("DOJ") immediately suspended her as of May 25, 2022. At that point, Respondent had already begun winding down her immigration practice and chose to find replacement counsel for her removal clients. Ms. Bryant believed it was in her best interest to take a hiatus from appeals and removal; therefore, in her opinion, she could apply for reinstatement once her health issues had stabilized. Unfortunately, those health problems were exacerbated when Respondent became legally blind due to an advanced progression of cataracts in both eyes. Ms. Bryant had surgery in May and June of 2022 to restore her eyesight.

Despite her health issues, Ms. Bryant was still able to maintain her criminal

law practice until she was disbarred by the State Bar of Arizona ("SBA") in September of 2022. Ms. Bryant appealed her decision to the Supreme Court of Arizona and was granted a stay of the decision by the Presiding Disciplinary Judge's disbarment decision with conditions of supervision.

For the following reasons, Respondent submits this Motion for Reinstatement.

**ARGUMENT FOR REINSTATEMENT**

Ninth Circuit Rule 46-2(h) sets forth the procedure by which attorneys may seek reinstatement following suspension or disbarment from practice. It provides: "A suspended or disbarred attorney may file a petition for reinstatement with the Clerk. The petition shall contain a concise statement of the circumstances of the disciplinary proceedings, the discipline imposed by this Court, and the grounds that justify reinstatement of the attorney." 9th Cir. R. 46-2(h).

As stated above, Respondent was disbarred in April of 2022 from this Court for failing to respond to an OSC issued on January 20, 2022. Respondent opted to delay her request for reinstatement while recovering from a heart attack and cataract surgery. After her disbarment from this Court, Respondent was disbarred from the DOJ, the U.S. District Court for the District of Arizona, and the State Bar of Arizona. Respondent applied for a stay of the Presiding Disciplinary Judge's decision, which was granted.

This Court held in *In re Girardi* "that as part of proving 'the grounds that justify reinstatement,' attorneys must, at a minimum, show they are in good standing in all jurisdictions to which they are admitted." 611 F.3d at 1039. Specifically, Rule 46-2(h) petitions should "include evidence that [the attorney] is

in good standing, with no discipline pending, in all courts and bars to which [the attorney] is admitted." Id.²

Respondent is unable to produce any certificates of good standing since each subsequent court imposed the same discipline without re-litigating Respondent's reasons for failing to respond to this Court. Since the discipline originated from this Court, the only positive factor Respondent can show is that the SBA granted a stay allowing Respondent to practice law in a limited capacity pending her Supreme Court of Arizona appeal.

Otherwise, Respondent is not authorized to practice before *any other* entity unless and until the Supreme Court rules that Respondent's license should be reinstated. Moreover, this Court has ruled that Respondent would not be required to provide evidence of reinstatement if her reciprocal disbarment was based on this Court's sanctions, not an independent assessment of the Respondent's circumstances.³

---

² "An attorney cannot justify reinstatement while he or she is currently suspended or disbarred in another jurisdiction—provided that the other jurisdiction had independent, non-reciprocal reasons for imposing discipline." *In re Yagman*, Docket No. 07-80153 (Ninth Cir. 2022).

³ "This pre-condition is important for instances where, as occasionally happens, an attorney is reciprocally suspended or disbarred in multiple jurisdictions stemming from one bar's decision. An attorney in that situation need not first be reinstated in every state or federal court that imposed reciprocal discipline before seeking reinstatement here." *Id.*

**ATTORNEY DISCIPLINE AND MENTAL HEALTH**

Most courts, including the SBA's Disciplinary Court, determine disciplinary sanctions in accordance with the American Bar Association's *Standards for Imposing Lawyer Sanctions* (hereinafter "Standards"). *In re Alexander*, 232 Ariz. 1, 13, 300 P.3d. 536, 548 (2013). The Standards enumerate what sanctions are appropriate for certain types of misconduct. Disbarment is the most severe form of sanction, which is reserved for the most egregious conduct. In its OSC, this Court warned Respondent that her failure to respond would result in no further action being taken, other than the disbarment Respondent suffered. Except that Respondent *did* answer by filing a hearing request. There were no proceedings **because no statement accompanied the OSC hearing request**. Absent the statement, this Court opted to impose a disbarment sanction.

However, a review of the Standards indicates that disbarment was not an appropriate sanction.

The purpose of lawyer sanctions is to generally protect the public. Standards 1.1. However, the sanction of disbarment is reserved for the most serious offenses which are injurious to the client and the legal profession. The OSC referenced Respondent being a member unbecoming the bar. Aligning that allegation with ABA Standards, Section 6.2 discusses when disbarment is an appropriate sanction for attorneys who abuse the legal process. It reads that "Disbarment is generally

appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding." The OSC references Respondent failing to follow court orders, to file extensions, and to file opening briefs during the period of her reinstatement from her 2019-20 suspension. At that time, Respondent was unknowingly suffering from severe depression and anxiety, which could only be managed by medication and psychiatric treatment. Respondent was made aware of her mental health condition upon receiving an assessment required by the SBA conducted by Dr. Phillip Lett, Ph.D., a Phoenix psychologist. Upon Dr. Lett's recommendation, Respondent received another assessment and began treatment with psychiatrist Dr. Nubia Swain, M.D. toward the end of 2020. Therefore, Respondent did not deliberately file cases with the Ninth Circuit with the intention of missing deadlines and ignoring court orders.

The Standards (3.0) require that an adjudicator consider the following factors when imposing sanctions: 1) the duty violated; 2) **the lawyer's mental state**; 3) the potential or actual injury caused by the lawyer's misconduct; and 4) the existence of aggravating and mitigating factors.

DUTY: Respondent was charged with conduct unbecoming a member of the Ninth Circuit bar (interpreted to mean that she was unprofessional, not diligent, and not competent).

MENTAL STATE: Respondent acknowledges that she failed to comply with various court responsibilities due to her mental illness. In short, during Respondent's tenure as an attorney with this Court, she has experienced a significant amount of (loss) grief and medical issues. In addition to substantial loss of family members and close family friends, Respondent was also diagnosed with depression, anxiety, chronic fatigue, chronic eating disorder, chronic pain, insomnia, and morbid obesity. Combining these events and conditions with Ms. Bryant's practice as an asylum attorney, the secondhand trauma involved with representing immigrant victims of violence led to Respondent's high functioning depression.[4] High functioning depression, or PDD, is a less severe form of major depression whereby a person experiences symptoms of mental illness but is still

---

[4] "High functioning depression (the clinical name is *persistent depression disorder* or PDD) is the same as major depression, although the symptoms can be less severe (low self-esteem, difficulty concentrating, changes in appetite and sleep habits, etc.)." Blog, Bridges to Recovery – Beverly Hills, www.bridgestorecovery.com.

able to function almost normally.⁵ In spite of Respondent's mental health condition, Respondent was able to maintain consistency in her USCIS and criminal law practice while slacking in her appellate practice.⁶ High functioning depression allowed Respondent to complete the basic functions of her practice, while preventing her from completing all of her duties ALL of the time.⁷

---

⁵ *Id.* Although the individual seems to be able to function almost normally, there are other factors to consider when diagnosing a patient with PDD. Those factors include the patient suffering from depression or a depressive mood for at least two years where at least two months of the mood consist of a change in appetite or sleep habits, difficulty concentrating, low self-esteem, inexplicable fatigue with no euphoric or energetic bursts (and with no episodes of mania or hypomania). The patient's moods cannot be explained by any other mental disorder and said moods impair the patient's normal function and cause significant distress to the patient. *Id.*

⁶ "Most people function almost normally but struggle internally." *Id.* "To the outside world, a person with PDD seems fine. Internally that person is struggling.

⁷ "Once diagnosed, PDD can be treated with a combination of medications and therapy. Antidepressants can lift mood, although it takes several weeks for them to begin working…Recognizing the signs of high-functioning depression isn't always easy. It is an insidious mental illness,

Respondent has already discussed at length her depression and anxiety, including the trauma involved from working immigration and criminal defense cases; as well as her high-functioning depression which allows her to work with varying degrees of energy (and competency) to maintain some of her caseload while neglecting others. <u>INJURY</u>: Respondent disrupted the court's docket and made extra work for court staff. Respondent also delayed the resolution of many of her clients' cases. <u>AGGRAVATING and MITIGATING FACTORS</u>: Respondent has been subjected to discipline by the SBA for her lack of diligence in handling client matters in the past. Respondent was also undiagnosed during those disciplinary investigations. Respondent's degree of depression and anxiety were so severe that it took a year for her to become stabilized on her anti-depressants and receive close to the right dosage.

Respondent is currently employed an Attorney Case Review Manager (ACRM). Although there are specific duties assigned to this role, Applicant's position is much like that of In-house Counsel. Applicant's duties are entirely transactional in nature but do involve training with staff and management.

---

because it hides behind the ability to function. Even for the person struggling with these feelings, it isn't easy to realize there is a real, underlying mental illness." *Id*.

In her role as the ACRM, Applicant works with multiple teams to protect the interests of the firm and to assure management that clients' cases are being properly processed. For example, Ms. Bryant's employer handles nonimmigrant visas such as the VAWA and U Visas. Under VAWA, a petitioner applies for relief based on victimization (abuse) by a spouse, parent, or child who is a United States Citizen or Lawful Permanent Resident. A U visa applicant applies for relief based on being a victim of certain types of crimes and having assisted law enforcement and prosecutors in the apprehension and prosecution of the suspect. Each of these applications requires hours of preparation.

Ms. Bryant is responsible for reviewing the individual applications and indices for completeness, and then she reviews the translations, declarations and documentary evidence to make certain that the applications contain a sufficient factual basis to support the requested relief. This position can be intense, but Ms. Bryant has learned to identify her stressors and is able to successfully manage her tasks through the power of meditation, use of her medication, and additional therapy.

There is no switch that controls Respondent's depression. Through a combination of technique, therapy, and medication, Respondent can maintain her

practice and limit the number of sad and depressing days through which she suffers.

## CONCLUSION

In conclusion, Respondent has conceded her inability to perform her duties as a result of a serious mental illness which went undiagnosed until the middle of 2020. During that time period, Respondent failed to follow this Court's rules and orders regarding appellate practice, disrupting the Court's docket and jeopardizing her clients' status within the U.S. Respondent believes her untreated mental illness serves as mitigating evidence and supports her request for reinstatement. Each license Respondent held was revoked as a result of this Court's order of disbarment, without an independent investigation of Respondent's circumstances. Therefore, Respondent respectfully requests reinstatement of her privilege to practice before this honorable Court.

RESPECTFULLY SUBMITTED this 20th day of February 2023.

        BY: \_\_/s/ Tori Bryant_____
              Tori S. Bryant, Attorney at Law
              374 E. H Street, Suite A, PMB 429
              Chula Vista, CA 91910
              619-208-0262 Telephone
              619-872-4363 Facsimile

## Certificate of Service

I certify that on February 20, 2023, I e-filed via CM/ECF, a true and complete copy of the foregoing petition to:

Clerk of Court
Ninth Circuit Court of Appeals


\_\_\_/s/\_\_Tori Bryant_____
       Tori S. Bryant, Esq.